Winnie Lacy, Appellee, v. Continental Casualty Com= pany, Appellant.

Gen. No. 16,604.

INSURANCE—*when accident policy lapsed.* Held, under the terms of a policy in question in this case, which provided for payment of premiums by the employer of the insured in a particular manner set forth in the application for the policy, that the insured had, by withdrawing certain wages earned by him, so affected the time of payment that such policy had lapsed at the time of his death and that a recovery thereunder could not be sustained.

Assumpsit. Appeal from the Circuit Court of Cook county; the HON. JESSE A. BALDWIN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Reversed and remanded. Opinion filed May 23, 1912. *Certiorari* denied by Supreme Court (making decision final).

MARTIN P. CORNELIUS, for appellant; MANTON MAVERICK, of counsel.

PARKER S. WEBSTER and SPENCER WARD, for appellee.

MR. JUSTICE MCSURELY delivered the opinion of the court.

This cause comes before us on an appeal from the finding and judgment of the trial court against the Continental Casualty Company, appellant, and in favor of Winnie Lacy, appellee, the beneficiary in a policy of insurance issued by the Casualty Company upon the application of her father, Moses Lacy, who was subsequently killed in a railroad accident. The Casualty Company declined to pay, claiming that the policy had lapsed before the death of Moses Lacy, whereupon appellee brought this suit upon the policy to recover the amount of the death indemnity.

The main facts are agreed upon by stipulation, and in brief are as follows: Moses Lacy was employed as a waiter on a dining car by the Pullman Company of Chicago. On April 1, 1907, he made a written application to the Casualty Company for a policy of accident insurance. At the same time he signed a pay order drawn on the Pullman Company and delivered the same with the application to the Casualty Company. Thereupon the Casualty Company issued and delivered to him its accident insurance policy, which is the basis of this suit. It was the custom of the Pullman Company to pay all waiters in its employ on the 15th day of each month the wages earned during the previous month. On April 18, 1907, Lacy drew $17.37 from the Pullman Company, which sum was all the wages he had earned during the calendar month of April, 1907, and he earned no more wages in that month. On May 1, 1907, Lacy went out on a trip for the Pullman Company, and continued thereon until May 11th, when he was killed in a railroad accident in California. He earned $10.64 in the calendar month of May, and said wages are still held by the Pullman Company. The pay order aforesaid was forwarded by the Casualty Company to the Pullman Company on April 22nd, and on said date Lacy's account was billed

to the Pullman Company for collection, on a form called a "Paymaster's Return List." On the 19th of May this form was returned to the Casualty Company by the Pullman Company, with the words "Not enough time" written by the paymaster in the column headed "Installment No. and Paymaster's Remarks." Thereupon the said policy of Lacy was marked "Lapsed" as of May 1st on the records of the defendant company, and the defendant company also stamped the word "Lapsed" in the column headed "Installment No. and Paymaster's Remarks" upon the paymaster's return list.

The provisions of the application signed by Lacy which are material at this time are as follows:

"I agree to pay therefor $16.00 in 4 installments of $4.00 each. If paymaster's order is given to provide for the payment of these installments, I agree to pay them as therein provided, and do hereby make such order a part of my contract with the company. If no paymaster's order is given, the first installment shall be due, without notice, on the 15th day of May, 1907, and one installment of like amount shall be due, without notice, on the same day of each succeeding month until all are paid. I further agree that if any payment be not made by 12 o'clock noon, Standard Time, of the day when due as above specified, all my rights under said policy and the rights of the beneficiary thereunder shall then and thereby become void and that my policy can be reinstated only at the option of the Company by tendering payment at its general office in Chicago, and if accepted, the reinstatement shall take effect from and after the receipt of such payment and no claim for loss arising between the time of such forfeiture and reinstatement shall be good against the company."

The paymaster's order was in part as follows:

"Please pay for me to the Continental Casualty Company the sum of $16.00 and charge the same against my pay account for services rendered or to be rendered by me.

Lacy v. Continental Casualty Co., 170 Ill. App. 527.

"This order is given to provide for the payment of premium on a policy of insurance, for which I have this day made application, and you are authorized and requested to pay the said sum in installments as follows:

"1st installment of $4 to be paid from my wages for month of April, 1907.

"2nd installment of $4 to be paid from my wages for month of May, 1907.

"3rd installment of $4 to be paid from my wages for month of June, 1907.

"4th installment of $4 to be paid from my wages for month of July, 1907.

and further at the option of the Continental Casualty Company, to pay any installment, payment of which has been defaulted, from any reason whatever from my wages for any month thereafter succeeding. It is understood and agreed with respect to these installments, (1) that if each and every one of them be promptly paid as above specified, then and in that event only, they shall pay for my insurance under a policy to be issued to me by said Company, bearing even date and number herewith, for respective periods, to-wit: The first installment, two months; the second installment, two months; the third installment, three months; the fourth installment, five months, in their successive order as herein given; (2) that said Paymaster is my agent for the purpose of making such payments; (3) that his action is at my risk; and, (4) that if for any reason whatever payment of any installment be not made as above specified then all my rights under said policy and the rights of my beneficiary thereunder shall at once terminate and be void. I hereby waive for myself and for my beneficiary under said policy any notice of payment or non-payment of said installments, and I agree that should default be made in payment of any of the above specified installments and the defaulted installment be afterwards paid as above specified, then and in that event such payment shall reinstate my policy only from the date of the receipt of such payment

at the general office of the Continental Casualty Company.

"I agree that should I be discharged from or cease to be in the service of said Railway System before the first of said installments becomes due then all my rights and rights of my beneficiary in said policy shall immediately cease, unless I notify the Secretary of said Continental Casualty Company in writing within three days after leaving said service, and remit said installment with said notice.

"I understand that no agent of the Company has any authority or power to waive or change any of the printed provisions hereof.

(Signed)   MOSES LACY."

The policy contained the following provisions:

"The application herefor and any paymaster's order given to provide for the payment of premium are hereby made a part hereof.   The Company shall not be liable for any loss occurring hereunder while the Insured shall be in default in the payment of any premium.   Any unpaid portion of the annual premium hereon may be deducted from any claim hereunder. Strict compliance on the part of the Insured and beneficiary with all provisions of this policy is a condition precedent to recovery hereunder and any failure in this respect shall forfeit to the Company all rights to the principal sum and the indemnity."

It is claimed by appellee that under the terms of the application, pay order and policy, the insured had until May 15, 1907, within which to pay the first installment from his April wages, while the Casualty Company claims that the policy lapsed on May first. To determine which contention is the better founded in reason and justice is not free from difficulty.   However, after consideration, we have reached the conclusion that the clear construction favors the contention of the Casualty Company that the policy had lapsed on May 1, 1907, and therefore was not in force on May 11th, the date of Lacy's death.

Referring to the language in the application, it seems clear that if a paymaster's order should be given, its terms should control the payment of installments. It seems equally clear that in the event of no paymaster's order, the installments should be paid monthly on the 15th day of each month. The language is: "If no paymaster's order is given, the first installment shall be due, without notice, on the 15th day of May, 1907, and one installment of like amount shall be due, without notice, on the same day of each succeeding month until all are paid." This language is unambiguous and unequivocal. The words following evidently refer to 12 o'clock noon of the 15th day of each month, as specified, where no paymaster's order is given.

It is stipulated as a matter of fact that a paymaster's order on the Pullman Company was signed and given by Lacy to the Casualty Company at the same time that this application was signed and delivered. This would seem to make inoperative those provisions of the application and policy concerning the time and terms of payment conditioned upon Lacy's not giving a paymaster's order. Turning then to the paymaster's order, we find that it is an order on the Pullman Company to pay $16.00 to the Casualty Company "and charge the same against my pay account for services rendered or to be rendered by me," and the Pullman Company was "authorized and requested to pay the said sum in installments as follows: 1st installment of $4 to be paid from my wages for month of April, 1907," etc. It is said that the paymaster's order does not mention the date when such installments should be paid, and therefore it must have been intended that the Pullman Company need not pay the first installment until May 15th. This is reading something into the order which is not there, and which is not needed to clear any ambiguity. The time when such installments became payable was manifestly as

soon as the wages for the month were earned. The wages for the month of April would be earned and due to the employe on May 1st. It appears that it was the custom of the Pullman Company to make up the accounts with its employes for the monthly wages between the first and eighth of the succeeding month. At the time any account was made up, there was deducted from the amount due the employe any installment due on insurance under a paymaster's order, and at the same time the amount of this insurance installment was placed to the credit account of the insurance company. The employe was paid the balance to his credit on the 15th of the month. It is evident that the reason for providing that in the event the insured paid his installments direct to the Casualty Company without giving an order on the paymaster, they should be paid on the 15th day of the month, was that that day was pay day for the employe, who might not be in funds with which to pay his installment before that day. This also indicates that the purpose of compelling payment before 12 o'clock noon of the 15th was to encourage payment of insurance installments immediately upon the employe receiving his pay.

But no such reasons for fixing the time to the day or hour obtained when the payments were to be made by the Pullman Company under a pay order. The Pullman Company had about 3,000 accounts such as this with its employes, although not all of them with this Casualty Company. Legally it became liable for the installment as soon as the employe had earned his monthly wages; but it took about a week to make up all the accounts, and it could not be known on just what day any particular account would be made up and the amount of an installment placed to the credit of the insurance company. The most the paymaster's order could do was to provide that the installments to be paid by the Pullman Company should "be promptly paid."

If we are correct in this construction it follows that the installment from Lacy's April wages was due from the Pullman Company to the Casualty Company on May 1st, provided there was anything due Lacy from the Pullman Company for the month of April.

It is stipulated as a matter of fact that on April 18th, which was a few days before the Casualty Company forwarded the paymaster's order to the Pullman Company, Lacy drew from the Pullman Company all of the wages he had earned for April, and did not work for the Pullman Company any more during that month; so that by his own act he had made it impossible for the Pullman Company to comply with his order to pay the first insurance installment out of his wages for the month of April. The reason why the first installment on the policy was not paid was Lacy's own act in withdrawing his April earnings. Had he not done this, the first installment of $4.00 would have been due the insurance company on the first of May, and in due course of business would have been placed to its credit account in the books of the Pullman Company some time before the eighth of May.

Provision 4 of the paymaster's order reads: "that if for any reason whatever payment of any installment be not made as above specified then all my rights under said policy and the rights of my beneficiary thereunder shall at once terminate and be void."

It therefore follows that the policy of insurance lapsed on May 1, 1907, and was not in force on May 11, 1907, the date on which Lacy was killed.

Many authorities have been cited by both counsel, but no case has been presented which is precisely in point. The cases most nearly like the one before us are: Herbert v. Standard Insurance Co., 23 Ohio Cir. Ct., 225; affirmed in 68 Ohio St., 187; 70 N. E. Rep., 1122; Prichett v. Continental Cas. Co., Ky. Ct. Apps., 1904, 80 S. W. 181; Sewell v. Continental Cas. Co., Sup.

Ct. Miss., 1908, 46 So. Rep. 714; Aetna Life v. Ricks, Sup. Ct. Ark., 1906, 94 S. W. Rep. 923; Brown v. Pac. Mut. Life Ins. Co., Ct. of Appeals Mo., 1904, 82 S. W. Rep. 1122; Bone v. Travelers Ins. Co., Ct. of Appeals Ky., 4 S. W. Rep., 787.

For the reasons above indicated the judgment of the Circuit Court is reversed and the cause remanded.

*Reversed and remanded.*